SAM JOHNSON V. THE STATE.

No. 594.   Decided May 11, 1910.

**1.—Aggravated Assault—Charge of Court—Law not Applicable to Facts.**

Upon trial of an aggravated assault, the court should not have submitted the law upon the use of any dangerous weapon, etc., with intent to alarm, etc.; as this had no application to the facts of the case.

**2.—Same—Female—Charge of Court—Adult Male.**

Where, upon trial of aggravated assault upon a female by an adult male, the evidence showed that the injured party was a grandmother and had been twice married, and that the defendant was a justice of the peace and had been known by the witness for over twenty years, the contention that the evidence did not show that the injured party was a female and the defendant an adult male was untenable.

**3.—Same—Charge of Court—Requested Charge.**

Where, upon trial for aggravated assault, the State not only sought to convict defendant on account of the direct assault made upon the injured party, but also on account of participating in the acts of others in striking her, the court should have submitted a requested charge on the last issue thus raised.

. Appeal from the County Court of Shelby. Tried below before the Honorable W. D. White.

Appeal from a conviction of aggravated assault; penalty, a fine of $25. The opinion states the case.

*Brooke & Woolworth,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the County Court of Shelby County on the 21st day of last October on a charge of aggravated assault committed upon Mrs. D. A. Moore, and his punishment assessed at a fine of $25.

The facts in the case briefly show that Mrs. D. A. Moore was the wife of J. H. Moore, to whom she had been married some two or three years, and that she was at the time of the assault about 40 years of age. She had formerly been married to a man named Pelham, and as the result of this marriage had a son, who had, some time before the events herein narrated, himself been married, and as a result of such marriage had a boy about two years of age. It seems that young Pelham and his wife had separated, and as usual some controversy arose over the custody of the child. Mrs. Pelham had moved to Wilbarger County, and so far as Mrs. Moore and her husband knew was not in the country until the time of the alleged assault. It appears from the record that on Sunday, about the 15th of September, 1909, Mrs. Moore with her husband left their home to go in the neighborhood of Tenaha to visit a friend whom they heard was sick. While on their journey they came to a narrow place in the road with a ditch on either side where there was a buggy stopped in the road preventing their passage, and they had to stop their buggy. That when the buggy stopped one Joe Rowe came to where she and her husband were sitting and snatched the baby from him, and handed it to Mrs. Pelham, its mother. That she then started towards Mrs. Pelham to get the baby when Stennett pushed her back, and choked her, and tried to get a pistol out of his pocket, and that she took hold of his hand to prevent him from getting the pistol, and while they were scuffling over the pistol appellant came up to where they were and struck her a blow in the side with his fist. Her testimony is corroborated to some extent by that of her husband and a number of other witnesses. Appellant took the stand in his own behalf and testified that he had some time before the day of the alleged assault been with Mrs. Pelham to the residence of Mrs. Moore to try to get the baby but was unsuccessful; that he knew the parties with Mrs. Pelham intended to try to get the baby on the day in question, and that Mr. and Mrs. Moore were going to Tenaha on Sunday, and the parties planned to get the baby by stopping them in

the road; that he went along because he thought there might be trouble and that he would and could prevent it; that when the parties stopped he was out in the bushes on the side of the road where he could not be seen; that Mrs. Moore and Stennett were scuffling over a pistol when Stennett called to him to help him and prevent Mrs. Moore from getting the pistol; that he went to where they were; that Mrs. Moore had hold of the barrel of the pistol, which was in Stennett's pocket, and that Stennett had hold of the pistol trying to prevent her from getting it from him. That he took hold of Mrs. Moore's fingers and hands and got her hands loose from the pistol. That this was all that he did; that he neither struck Mrs. Moore nor did he attempt to strike her, and that he saw no one else strike her. That his relations towards Mrs. Moore had always been friendly, and that they were friends as far as he knew, and that he had nothing against her husband. His testimony also distinctly negatives the fact that he knew of the purpose of the other parties to assault either Mrs. Moore or her husband. In addition to this he introduced testimony of a number of witnesses from Panola County, including the sheriff, who all testified that they knew him well, and that he was a man of excellent reputation as a peaceable and law-abiding citizen.

1. The charge of the court submitted as a basis of conviction both the assault by appellant on Mrs. Moore by striking her, and also the theory of his participation as a principal in the assault by other persons connected with the attempted rescue of the baby. Some complaint is made of this charge, among other things, on account of its inclusion of the statement in the definition that "the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another and under circumstances calculated to effect that object comes within the meaning of an assault." This instruction should not be included in the charge of the court on another trial for the reason that it has no application under the charge to the facts in this case at all.

2. Complaint is also made that the evidence does not raise the issue that the injured party, Mrs. Moore, was a female, and there was no evidence that appellant was an adult male over 21 years of age. Inasmuch as the statement of facts discloses that Mrs. Moore had been twice married, was a grandmother, and 40 years of age, according to the laws of nature, it could scarcely be contended that she was not a female. The evidence also indicates that appellant was acting justice of the peace at the time of the controversy, and that some of the witnesses had known him twenty years or more. We think that he is an adult and a man, would not trouble any jury to decide.

3. We think the case must be reversed, however, on account of the refusal of the court to give the following special charge:

"If Sam Johnson, the defendant, on the occasion on which the as-

sault is alleged to have been committed, went with Mrs. Genia Pelham and others for the purpose of regaining the possession of Mrs. Genia Pelham's child, and other parties committed an assault upon Mrs. Moore without the consent of the defendant, then the defendant would not be responsible for such assault, and if you so find, you can not convict the defendant in this case for such assault."

Considering this charge in connection with the general charge, which authorized a conviction of appellant on account of his own act, as claimed by the State, in striking Mrs. Moore, and his participation and encouragement in the acts of others in striking her, we think that it fairly presented the issue raised by his testimony, that he would not be responsible for an assault committed by others when such assault was committed without his consent.

For the error pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*